# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

FRANCISCO JAVIER TOVAR BLANCO,

    Plaintiff,

v.                                 CASE NO.

FIRST ADVANTAGE
BACKGROUND SERVICES
CORP.,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, FRANCISCO JAVIER TOVAR BLANCO, and for his Complaint Defendant FIRST ADVANTAGE BACKGROUND SERVICES CORP. ("FABSC"), alleges as follows:

### NATURE OF THE CASE

1. This FCRA action arises out of Plaintiff's application for employment with non-party United Parcel Service of America, Inc ("UPS").

2. As part of its hiring processes, UPS and its subsidiaries use background checks to make employment decisions.

3. UPS hired FABSC to perform a pre-employment background check on Plaintiff, the reporting of which information is subject to the FCRA's strictures. The FCRA imposes several important accuracy and transparency

1

requirements on consumer reporting agencies ("CRAs") like Defendant FABSC, which are designed to protect consumers like Plaintiff.

4. Plaintiff brings a claim against FABSC under 15 U.S.C. § 1681e(b), for its failure to establish or to follow reasonable procedures to ensure the maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintains concerning the Plaintiff.

5. Plaintiff also brings a claim against FABSC for violations of 15 U.S.C. § 1681k, as it furnished consumer reports containing public-record information likely to have an adverse effect on a consumer's ability to obtain employment but failing to provide at-the-time notification to the consumer that such information was being reported and to whom it was being reported.

6. UPS received the report results from FABSC around November 12, 2020 and decided that an entry by FABSC that Plaintiff was disqualified from employment UPS was a correct conclusion. Plaintiff happened to contact UPS on November 17 to inquire about the status of his employment, and an individual at UPS responded, in a text message, that Plaintiff's "background check came back ineligible, unfortunately we will not be able to move forward with your applications. You will get a letter in the mail."

7. The report from FABSC inaccurately suggested Plaintiff had a criminal history, but Plaintiff has no criminal record.

8. The report also claimed that FABSC was unable to verify Plaintiff's Social Security Number, a further inaccuracy. Plaintiff presented to UPS his

Social Security Card and government-issued identification when he applied to work at UPS. Plaintiff's Social Security Number belongs to him, so FABSC should have had no difficulty verifying it.

9. Even where reports are accurate, the FCRA still demands notice of the reporting under Section 1681k(a)(1), which allows consumers to discuss potentially negative information with employers and potentially soften the blow of such information in the employer's hiring decision.

10. Defendant does not maintain any procedure by which it ensures that the public-record information it reports to its customers is complete or up-to-date. Defendant therefore cannot rely on this option for complying with 15 U.S.C. § 1681k(a).

11. Because of this lack of notice, by the time he learned of these inaccuracies, it was too late for Plaintiff to save his job at UPS. The decision not to hire him had been made, several days before Plaintiff received the report from FABSC on which UPS based that decision.

## JURISDICTION AND VENUE

12. The Court has subject-matter jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

13. Venue is proper in this Court, because all of the events giving rise to Plaintiff's claims took place in this District and Division. Plaintiff applied for employment here, and FABSC failed in its FCRA duties here.

## PARTIES

14. Plaintiff is a "consumer" as protected and governed by the FCRA.

15. Defendant FABSC is a corporation authorized to do business in the State of Florida through its registered agent Corporation Service Company, located at 1201 Hays St., Tallahassee, FL 32301.

16. At all times pertinent to this Complaint, Defendant FABSC was a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). FABSC is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties.

17. FABSC disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

**I.   Plaintiff's Application For Employment.**

18. On or around November 1, 2020, Plaintiff sought employment with UPS. During the application process, Plaintiff provided FABSC with the documentation confirming his ability to work in the United States, including his driver's license and Social Security Card.

19. Plaintiff interviewed with UPS around that same time, and UPS offered Plaintiff a position conditioned on his passing a background check.

20. On around November 5, 2020, Plaintiff accessed a UPS-branded, FABSC-operated web portal and completed application paperwork for UPS. Part

4

of that application material included providing FABSC with personal identifying information.

21. Plaintiff's full name is Francisco Javier Tovar Blanco. When he completed the application for FABSC to perform the background check, there were not enough fields in the electronic form for Plaintiff to insert his entire name. He therefore provided all of his name that would fit the fields in the application.

22. FABSC took the information Plaintiff provided and created a background check report about him for UPS. FABSC completed the report on November 12, 2020.

23. As is commonplace for background-check companies, FABSC offers a "scoring" or "adjudication" service to employers. Employers like UPS provide FABSC with hiring criteria, and FABSC compares the results of its background check to that hiring criteria to determine if the subject consumer is disqualified from employment at UPS based on information FABSC uncovers during its creation of the background report.

24. FABSC then provides the report to the employer with a score of "eligible" or "ineligible" for employment based on the employer's hiring criteria.

25. In Plaintiff's case, FABSC took the name its system permitted Plaintiff to provid and, when it searched criminal records, confused him with a sex offender who has a similar name. This individual also has a different date of birth than Plaintiff.

26. FABSC also was unable to verify Plaintiff's Social Security Number,

another mistake. Plaintiff maintains a validly issued Social Security Number, and provided the correct number to UPS and FABSC.

27. Using FABSC's hiring criteria, FABSC reviewed the false sex-offender charges and supposed inability to verify Plaintiff's Social Security Number, and graded Plaintiff "ineligible" for employment at UPS. FABSC communicated that result to UPS electronically on around November 12, 2020.

28. FABSC did not provide Plaintiff any notice that it was furnishing a consumer report with potentially damaging information to UPS.

29. On November 17, 2020, Plaintiff contacted UPS and inquired about the status of his application. The UPS representative, who had obviously reviewed the "ineligible" grade FABSC assigned to Plaintiff's background check, responded to Plaintiff's inquiry that his "background check came back ineligible, unfortunately we will not be able to move forward with your applications. You will get a letter in the mail."

30. UPS therefore adopted wholesale the FABSC score of "ineligible," and at that point considered Plaintiff to be rejected as an applicant.

31. Plaintiff pleaded with UPS that he has no criminal history, and that the rejection must be the result of a mistake. Those efforts were in vain, as he was not able to save his job at UPS.

32. Five or six days later, on around November 23, 2020, Plaintiff received a letter informing him that FABSC provided UPS with a report that may negatively impact whether UPS would not hire him. This letter also contained the

6

FABSC report and summary of Plaintiff's FCRA rights. This was the first opportunity Plaintiff had to view the report FABSC created about him and on which UPS based its hiring decision.

33. What consumer applicants do not know is that this letter is merely a pretextual attempt to assist UPS in complying with Section 1681b(b)(3) of the FCRA. Although on UPS letterhead, the letter is generated by FABSC and mailed by a third-party vendor. The scoring of a report as "ineligible" triggers the creation of the letter and starts the mailing process, all of which is done electronically with little or no human involvement.

34. This first, pre-adverse-action letter is sent, then FABSC waits approximately five business days and mails a second letter informing the consumer of UPS's supposed final decision not to hire him or her.

35. This decision is "supposedly final" because, as Plaintiff's facts bear out, the ineligible grade on the report is all that matters to UPS. That is the final hiring decision, and it takes place the moment FABSC communicates the ineligible adjudication to UPS.

36. The pre-adverse-action letter is pretextual because, as Plaintiff's facts confirm, UPS gives applicants virtually no chance of rehabilitating themselves against the results FABSC provides. Ineligible is ineligible, even in the case of inaccuracies like those in the report about Plaintiff.

37. The report is shockingly inaccurate. Next to the heading indicating FABSC searched for records about Plaintiff in the National Sex Offender Registry,

FABSC entered a score of "decisional," suggesting that there were sex offender records attributable to Plaintiff that UPS should consider.

38. This suggestion is false. Plaintiff has no criminal history at all, so there should be no sex-offender records for UPS to take into account when deciding whether to hire Plaintiff.

39. The report from FABSC also stated that it was unable to verify Plaintiff's Social Security Number. This too was false, as Plaintiff's Social Security Number is valid and was properly issued to him.

40. Whatever a reasonable reader was supposed to infer from FABSC's entry of a "decisional" grade regarding sex-offender records or the supposed inability to verify Plaintiff's Social Security Number, UPS obviously just accepted FABSC's label of "ineligible" and refused to hire Plaintiff on that word alone.

41. Plaintiff's facts confirm this, as a UPS representative communicated the rejection to him based on the report results FABSC provided to UPS. That individual even used the term that appears on the FABSC report—ineligible—when stating that UPS would no longer hire Plaintiff.

**B.  FABSC Acted Willfully In Violating The FCRA.**

42. Section 1681e imposes a simple, and unequivocal requirement that FABSC must maintain reasonable procedures to ensure maximum possible accuracy of the information in its report regarding Plaintiff.

43. FABSC failed to maintain and follow reasonable procedures regarding the accuracy of information when preparing and furnishing UPS a consumer report regarding Plaintiff.

44. FABSC failed to consider all the relevant information in its possession when preparing the report regarding Plaintiff, as it should have been clear the information returned about Plaintiff did not match the personal information Plaintiff provided to FABSC.

45. Likewise, there should be no reason for FABSC to have reported to UPS that Plaintiff's Social Security Number was unverifiable. There are numerous sources of such information, all of which are reasonably available to FABSC, and would have confirmed that Plaintiff has a valid Social Security Number if FABSC had used any of these sources.

46. FABSC failed to utilize reasonable procedures to ensure maximum possible accuracy of the information and proceeded to provide an inaccurate report which negatively affected Plaintiff.

**C.   Damages**

47. Due to begin a denied a job with UPS, Plaintiff lost out on potential income he would have received.

48. As a result of this conduct including the actions and/or inactions of FABSC, Plaintiff suffered damages including but not limited to: loss of salary, lost time discussing the inaccuracies with UPS, stress, and loss of sleep.

49. Plaintiff has felt embarrassment with his community and family over the loss of employment and damage to his name, particularly being wrongfully labeled as a "sex offender." Plaintiff suffered mental anguish as he knew the information was inaccurate and believed FABSC should have easily been able to notice and correct the inaccuracies.

50. Plaintiff additionally felt fear and apprehension at applying for further jobs know that FABSC would likely just supply the same false report again, resulting in further employment denial.

## CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681e(b)

51. Plaintiff incorporates by reference those paragraphs set out above, 1 through 50, as though fully set forth herein.

52. FABSC violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintains concerning Plaintiff. FABSC report was patently false in such a way and to such an extent that it can be expected to adversely affect hiring decisions. FABSC should have known Plaintiff did not have criminal charges and was not a sex offender due to the information provided.

53. Further, FABSC should not have reported to UPS that Plaintiff's Social Security Number was unverifiable. Numerous sources, all available to

FABSC, would have confirmed that Plaintiff possesses a valid Social Security Number.

54. The conduct, action, and inaction of FABSC was willful, rendering it liable for Plaintiff's actual damages, as well as punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. FABSC acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681b(b)(3)(A).

55. FABSC knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and published circuit court authority. FABSC obtained or otherwise had available substantial written materials that apprised FABSC of its duties under the FCRA.

56. Moreover, FASBC has been sued repeatedly for inaccuracies relating to its background-check reports. *See, e.g.*, *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 739 (11th Cir. 2020). It has therefore long been on notice of the problems inherent in its systems, yet has done nothing to correct them.

### COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681k(a)

57. Plaintiff incorporates by reference those paragraphs set out above, 1 through 50, as though fully set forth herein.

58. The consumer report of Plaintiff was furnished for an employment purpose and contained one or more public records of the type that may adversely affect a consumer's ability to obtain employment.

59. Defendant uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on the contemporaneous-notice requirement of § 1681k(a)(1) to comply with the FCRA.

60. In creating consumer reports for employment purposes, Defendant makes no effort to ensure that public-record information it reports is "complete and up-to-date" at the time it furnishes such records to employers like UPS.

61. Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnishes and sells these records in one of its reports.

62. When FABSC provided the report about Plaintiff with negative information to UPS, Defendant did not send Plaintiff a notice pursuant to 15 U.S.C. § 1681k(a)(1).

63. Defendant's failure to timely provide the required FCRA notice to the Plaintiff violated 15 U.S.C. § 1681k(a)(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

a) That judgment be entered for Plaintiff against Defendant for statutory damages and punitive damages for violations of 15 U.S.C. §§ 1681e(b) and 168ak(a), pursuant to 15 U.S.C. § 1681n;

b) That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

c) That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief, that may be permitted.

**A TRIAL BY JURY IS DEMANDED.**

Dated this 7th day of October, 2022.

Respectfully submitted,

*/s/ Octavio "Tav" Gomez*
Octavio "Tav" Gomez, Esquire
Florida Bar No.: 0338620
The Consumer Lawyers, PLLC
412 E. Madison St. Ste 916
Tampa, Florida 33602
Telephone: (813) 299-8537
Facsimile: (844) 951-3933
tav@theconsumerlawyers.com
jason@theconsumerlawyers.com

and

**CRAIG C. MARCHIANDO**
Florida Bar No. 1010769
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662

13